IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RASHID AWADH RASHID AL-UWAIDAH, et al., <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, et al., <br><br> Respondents. | Civil Action No. 05-1668 (GK) |

**RESPONDENTS' OPPOSITION TO PETITIONER'S
RESPONSE TO COURT'S ORDER TO SHOW CAUSE
WHY THIS CASE SHOULD NOT BE DISMISSED**

As respondents previously notified the Court, petitioner Rashid Awadh Rashid Al-Uwaidah has been transferred to the Government of the Kingdom of Saudi Arabia and released from United States custody. Nevertheless, responding to an order of the Court directing him to show cause why this habeas corpus case should not be dismissed, petitioner requests that the case be kept alive to enable his counsel to engage in discovery to pursue speculative theories lacking any basis in fact, and accuses respondents of violating court rules. These arguments are wholly without merit. Indeed, petitioner's present argument is particularly baseless given that his counsel consented to and requested acceleration of the very transfer he now (erroneously) claims violated court rules. This habeas case is plainly moot and should be dismissed.

**PROCEDURAL BACKGROUND**

In this case, as in many other Guantanamo detainee habeas cases, petitioner moved for (dkt. no. 10), and the Court entered (dkt. no. 22), an order prohibiting his removal from Guantanamo unless thirty-days advance notice was given to the Court and counsel. Petitioner

sought this relief in order to "enable counsel to contest any such removal." (Dkt. no. 11, at 2)

Responding to that motion, respondents set forth in detail their policies and practices regarding transfers of Guantanamo detainees. (Dkt. no. 12) In particular, respondents submitted declarations of high-level officials explaining that there are two types of transfers: transfers for release, and transfers to the control of another government (generally, the government of the detainee's home country) for such continued detention, investigation, and/or prosecution as that government may deem appropriate. Waxman Decl. ¶¶ 3-5 (filed as exhibit to dkt. no. 12). With respect to the latter type of transfer, such transfers are arranged after a dialogue with the foreign government "to ascertain or establish what measures the receiving government intends to take pursuant to its own domestic laws and independent determinations that will ensure that the detainee will not pose a continuing threat to the United States and its allies." Waxman Decl. ¶ 5. Moreover:

> In all such cases of transfer for continued detention, investigation, and/or prosecution, as appropriate, as well as situations in which the detainee is transferred for release, the detainee is transferred entirely to the custody and control of the other government, and once transferred, is no longer in the custody and control of the United States; the individual is detained, if at all, by the foreign government pursuant to its own laws and not on behalf of the United States. When detainees are transferred to the custody or control of their home governments, it is frequently the case that the home government takes the detainee into its custody, at least for an initial period. In some cases, the home government has subsequently released the detainee, sometimes after a period of questioning or investigation, while in other cases, the detainees have remained in confinement or subject to other restrictions in their home countries for various reasons based on the determinations and laws of the home government.

Id.

On April 26, 2006, in compliance with the Court's order requiring thirty-days notice of any transfer, respondents notified the Court and petitioner's counsel of their intent to release

petitioner from United States custody (dkt. no. 34).  That notice made clear that "petitioner will be transferred to the control of his home government <u>for continued detention, investigation, and/or prosecution</u> as that country deems appropriate, consistent with the policies and practices pertaining to such transfers as outlined in the [previously filed] declarations."  April 26 Notice, at 2 (emphasis added).

The April 26 Notice also invited petitioner's counsel to contact government counsel if they wished to expedite transfer by waiving the 30-day period that they had previously requested to enable them to contest a removal from Guantanamo.  April 26 Notice at 2 n.2.  Petitioner did not use the 30-day period to <u>contest</u> the transfer; rather, petitioner's counsel accepted the invitation in the April 26 Notice and contacted government counsel to pursue <u>expediting</u> the transfer.  After discussions between the parties, petitioner's counsel signed a Stipulation reflecting petitioner's consent, waiving the thirty-days notice requirement, and asking the Court to "so order."  The stipulation was filed on May 5, 2006 and "so ordered" by the Court on May 9.[1]  (Dkt. nos. 35, 36)  Petitioner's repatriation to Saudi Arabia occurred a short time thereafter.  (Dkt. no. 37)

On May 24, 2006, in light of the transfer, the Court ordered petitioner's counsel to show cause by June 10, 2006 why the case should not be dismissed.  (Dkt. no. 40)  In their June 12 response, petitioner's counsel asserted for the first time that the transfer was a "clear violation" of an appellate procedure rule and that continued jurisdiction exists because, despite the transfer, petitioner might still be in the "constructive custody" of the United States.  (Dkt. no. 41)

---

[1] The procedural history in Petitioner's Response omits this document.

## ARGUMENT

A.  **Petitioner Offers No Legitimate Basis for Continuing This Case in Light of the Fact That Petitioner Is No Longer in United States Custody**[2]

Petitioner does not appear to quarrel with the self-evident proposition that, if a habeas petitioner is released from the custody of the United States, the appropriate disposition generally is dismissal. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). Instead, he asserts that his habeas claims remain live under a theory of so-called "constructive custody," relying heavily on the decision in Abu Ali v. Ashcroft, 350 F. Supp. 2d 28 (D.D.C. 2004).[3] However, there is nothing to support any theory of "constructive custody" in this case other than petitioner's counsel's unhinged speculation, which is contradicted by sworn testimony in the record. As noted above, the Waxman Declaration makes clear that in this type of situation, "the detainee is transferred entirely to the custody and control of the other government, and once transferred, is no longer in the custody and control of the United States; the individual is

---

[2] In addition to dismissal being appropriate for the reasons stated herein, dismissal is also compelled by the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Because our understanding is that it is the sense of the Court to await anticipated guidance from the D.C. Circuit regarding the effect of the Detainee Treatment Act before deciding any pending motions, we will not discuss the impact of the Detainee Treatment Act further in this particular submission, without prejudice to any later assertion of the jurisdictional issue. See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived").

[3] Respondents do not concede that "constructive custody" would be a sufficient legal predicate for habeas jurisdiction, but it is unnecessary to reach that issue here, as petitioner fails to show any basis for such a theory in this case in any event.

detained, if at all, by the foreign government pursuant to its own laws and not on behalf of the United States." Waxman Decl. ¶ 5; see also April 26 Notice (emphasizing that this transfer was consistent with the policies and practices outlined in the Waxman Declaration).

Moreover, the same court that decided Abu Ali emphatically rejected attempts to extend its reasoning to the very different context of repatriations of alien enemy combatants from Guantanamo to their home countries. See Al-Anazi v. Bush, 370 F. Supp. 2d 188, 197 n.9 (D.D.C. 2005). As Judge Bates explained, among other things, "the petitioners in Abu Ali came forward with a variety of different types of information suggesting United States involvement in the detention, including [quotations from] named United States officials, declarations containing the transcribed text of government documents, and affidavits regarding communications between petitioner's family and Saudi officials."[4] Id. Moreover, the fact that the detainee in Abu Ali was a United States citizen "featured prominently in the reasoning of that case." Id. (citing Abu Ali, 350 F. Supp. 2d at 37-41, 54-65). Finally, Judge Bates considered the same declarations describing United States policy and practices regarding repatriations that are on file in this case "strong rebuttal evidence" that undercut the premise for any constructive custody theory. Id. Thus, "Abu Ali is not particularly instructive here." Id.

Nor is there any basis for discovery. The "constructive custody" theory here is predicated on no facts or well-founded allegations, only on counsel's rank speculation, mistrust,

---

[4] Here, in contrast to Abu Ali, petitioner's sole evidentiary submission is a two-paragraph declaration by his counsel saying nothing more than that petitioner's family reported he was currently detained by the Saudi government. See Response, Ex. A. Of course, that circumstance is consistent with, and not surprising in light of, the description of the transfer provided to petitioner's counsel before they consented to it, and thus says nothing to prove that he is in the "constructive custody" of the United States.

5

and non sequiturs.[5]  Such "distrust [that] is based on nothing more than speculation [and] innuendo . . . . is not the stuff that should cause a court to disregard declarations of senior Executive Branch officials submitted to the Court 'under the penalty of perjury.'"  Almurbati v. Bush, 366 F. Supp. 2d 72, 78 (D.D.C. 2005).  Indeed, this sort of bootstrapping is not accepted even in an ordinary case, let alone in these extraordinary circumstances involving repatriation of aliens captured abroad during a period of armed conflict.  See, e.g., Consejo Puertorriqueno por la Paz v. Director, FBI, 458 F. Supp. 1041, 1043 (D.D.C. 1978) (refusing to authorize discovery because "the complaint must stand or fall on its own merits and cannot be used as a vehicle for searching out and discovering a right of action" (internal quotation marks omitted)).  In any event, discovery would serve no useful purpose given that petitioner's counsel have already been apprised of the nature and circumstances of the transfer.  See April 26 Notice, at 2 ("petitioner will be transferred to the control of his home government for continued detention, investigation, and/or prosecution as that country deems appropriate, consistent with the policies and practices

---

[5] Petitioner considers the following to be "circumstantial evidence" of constructive custody:  "There has been no suggestion that Mr. Al-Uwaidah was held at Guantanamo on account of violations of the laws of Saudi Arabia; thus, there is no apparent reason for his continued detention -- without formal charges -- other than that it is at the behest of the United States."  Response at 6.  This inference makes no sense.  Of course respondents do not hold detainees at Guantanamo based on the laws of foreign countries.  It hardly follows that the detainee's home government could not have its own reasons for detention, investigation, or prosecution, or that subsequent detention of a repatriated individual by his own government can be presumed a sham.  Similarly, petitioner's conjecture that respondents' motive for repatriating detainees is to evade the jurisdiction of the courts is not only undermined by sworn testimony, but also refuted by historical fact.  See Waxman Decl. ¶ 3 ("Transfers of detainees are and have been made in accordance with the policy and practice outlined herein, rather than to thwart the actual or putative jurisdiction of any court."); Respondents' Opposition to Petitioners' Motions for Preliminary Injunctions Requiring Advance Notice of Transfer or Release (dkt. no. 12) at 9-10 n.7 (pointing out that numerous transfers were taking place before the Rasul decision, i.e., at a time when the courts did not have jurisdiction).

pertaining to such transfers as outlined in the [previously filed] declarations"); Waxman Decl.; Prosper Decl.

**B.     Petitioner's Accusation of a Violation of Appellate Rules is Specious**

Petitioner's second asserted basis for keeping this case alive despite his release from United States custody is that the transfer, which he consented to and asked the Court to expedite by lifting its thirty-days notice requirement, was a "clear violation" of Federal Rule of Appellate Procedure 23, for which respondents should not be "reward[ed]." Response at 7. Even setting to one side the fact that Fed. R. App. P. 23 is inapplicable to this transfer and case for the reasons stated in O.K. v. Bush, 377 F. Supp. 2d 102, 116-17 (D.D.C. 2005); see also Respondents' Opposition to Petitioners' Motions for Preliminary Injunctions Requiring Advance Notice of Transfer or Release (dkt. no. 12) at 15 n.9, petitioner cannot reasonably be heard to complain that his release from United States custody violated any court rule. Not only did he refrain from challenging the transfer during the 30-day period he had previously sought for the sole purpose of such a challenge, he affirmatively consented to it on the record after being apprised of the nature of the transfer and destination country. In fact, he asked this Court to dispense with the 30-day period in order to authorize the transfer to occur sooner than it otherwise could have, which relief was granted. In light of this background, petitioner's newly contrived assertion that "[b]y unilaterally transferring Mr. Al-Uwaidah to the Saudi government, Respondents have acted in clear violation of Rule 23, and have frustrated the rule's purpose" (Response at 7) is nonsensical and should be rejected out of hand.

## **CONCLUSION**

For the reasons stated above, the arguments in Petitioner's Response to Court's Order to Show Cause Why This Case Should Not Be Dismissed should be rejected and the case dismissed.

Dated: June 16, 2006                                  Respectfully submitted,

                                                                        PETER D. KEISLER
                                                                        Assistant Attorney General

                                                                        KENNETH L. WAINSTEIN
                                                                        United States Attorney

                                                                        DOUGLAS N. LETTER
                                                                        Terrorism Litigation Counsel


                                                                          /s/ Robert J. Katerberg
                                                                        JOSEPH H. HUNT (D.C. Bar No. 431134)
                                                                        VINCENT M. GARVEY (D.C. Bar No. 127191)
                                                                        TERRY M. HENRY
                                                                        JAMES J. SCHWARTZ
                                                                        PREEYA M. NORONHA
                                                                        ROBERT J. KATERBERG
                                                                        ANDREW I. WARDEN
                                                                        NICHOLAS J. PATTERSON
                                                                        Attorneys
                                                                        United States Department of Justice
                                                                        Civil Division, Federal Programs Branch
                                                                        20 Massachusetts Ave., N.W.
                                                                        Washington, DC  20530
                                                                        Tel:  (202) 514-4107
                                                                        Fax:  (202) 616-8470

                                                                        Attorneys for Respondents